UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SARINA L. WOJCIECHOWSKI, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. C-10-43 |
| | § | |
| NATIONAL OILWELL VARCO, L.P., | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court are Defendant National Oilwell Varco's Motion for Summary Judgment (D.E. 29) and Defendant's Motion to Strike Plaintiff Sarina Wojciechowski's Summary Judgment Evidence. (D.E. 33.) For the reasons set forth below, Defendant's Motion for Summary Judgment (D.E. 29) is DENIED IN PART and GRANTED IN PART, as detailed herein. Defendant's Motion to Strike (D.E. 33) is DENIED in PART and GRANTED IN PART, as detailed herein.

## I.   JURISDICTION

This Court has subject matter jurisdiction over this action because Plaintiff brings claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq.

## II.   BACKGROUND

### A.   Factual Background

Plaintiff Sarina Wojciechowski alleges she was discriminated against because of her sex while she was an employee for Defendant National Oilwell Varco ("NOV"). Specifically, she alleges she was given less pay than similarly-situated male counterparts, heavier work assignments with less assistance than male employees, and was denied certain work-related benefits, such as use of a company vehicle, which were given to male employees. (D.E. 24, p. 3.)

The summary judgment evidence establishes as follows:

Defendant NOV is a company that provides mechanical components for land and offshore drilling rigs and other drilling equipment.  (D.E. 29, Ex. 1 (Jurecek affidavit) at ¶ 2.) Plaintiff was hired by NOV on August 7, 2007 and began working as an administrative assistant in NOV's Corpus Christi office, part of the company's Mid-South Region.   (D.E. 29, Ex. 2 (Wojciechowski Depo.) at 26-27.)  Her supervisor at the time was Matthew Crook, the District Manager of NOV's Corpus Christi office, who reported to Michael Jurecek, the Mid-South Regional Manager.  (Id. at 29.)  Plaintiff, who had no prior experience in the oil and gas industry, was given a starting rate of pay of $11 per hour.  (Id. at 18, 19, 26.)  In her role as administrative assistant Plaintiff did general secretarial work.  (Id. at 28-29.)

On May 3, 2008, Plaintiff was promoted to the position of office manager of NOV's Corpus Christi office.  She was in charge of supervising one receptionist.  Otherwise, her duties were largely the same.  Her pay increased from $11 per hour to a salary of $37,440 per year.  (Id. at 32-34.)

In the summer of 2008, NOV closed its Corpus Christi office for business reasons, merging the office with the Alice, Texas office.  Alice's office already had a manager and a second manager was not required.  Therefore, in an effort to keep Plaintiff in its workforce, NOV decided to give Plaintiff the job of entry-level Sales Manager at the Alice office, starting August 25, 2008.  (Id. at 40, 49.)

As entry-level Sales Manager, Plaintiff was responsible for overseeing the sales activities of seven "outside sales employees" (or "account managers") and six "inside sales employees" (or "dispatchers"), and also was responsible for completing related paperwork and reports.  She

reported to K.C. Potter, District Manager for the Alice office, who in turn reported to Jurecek. (Id. at 52, 57, 39, 49, 50.)

The parties are in agreement that, despite her promotion to Sales Manager in August 2008, Plaintiff's pay level was not increased.  According to Jurecek, the reason was that this was an entry-level position, Plaintiff had no prior experience in this type of position, and Plaintiff had just been given a pay raise due to her promotion to office manager in May 2008.  (D.E. 29, Ex. 1 (Jurecek affidavit) at ¶ 6.)  Moreover, NOV contends, NOV was forced to freeze all merit based pay increases for its management staff due to negative market conditions in late 2008 and early 2009.  According to Jurecek, none of the Sales Managers in the Mid-South Region, including Plaintiff, received a merit based pay increase during the last quarter of 2008 or the first two quarters of 2009.  (D.E. 29, Ex. 1 (Jurecek affidavit) at ¶ 7.)

On April 13, 2009, NOV informed Plaintiff that she would be discharged due to NOV's need to reduce its work force.    (D.E. 29, Ex. 1 (Jurecek affidavit) at ¶ 8.)  Following the discharge, Jurecek redistributed Plaintiff's duties as Sales Manager between K.C. Potter (District Manager of the Alice office), Robert Caskey (an outside sales employee or "account manager") and Blas Castillo (an inside sales employee or "dispatcher").   Mr. Caskey assumed the responsibility for coordinating and overseeing the activities of the outside salespeople in the Alice office.  But, according to Jurecek, Caskey's primary job duty remained engaging in outside sales to customers and he continued calling on and making sales to NOV's customers and potential customers at their rig sites.  He was not given an "assistant" to help him complete his tasks.  (Id. at ¶ 9.)

**B.      Procedural Background**

On April 16, 2009, three days after she was terminated from her job, Plaintiff timely filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC") alleging gender discrimination under Title VII of the Civil Rights Act and the Equal Pay Act.  (D.E. 24, p. 4.)

On February 9, 2010, Plaintiff filed a Complaint with this Court alleging gender discrimination under Title VII, the Equal Pay Act, and the Texas Commission on Human Rights Act (TCHRA). (D.E. 24.)

On May 13, 2010, the Court granted Defendant's 12(b)(6) motion to dismiss Plaintiff's claim for wrongful discharge under Title VII and the TCHRA, finding that Plaintiff had failed to exhaust her administrative remedies because she did not raise her claims for wrongful termination in her EEOC charge, even though it was filed three days after she was terminated. (D.E. 28.)

Defendant now moves for summary judgment on the remainder of Plaintiff's claims: (1) wage discrimination under the Equal Pay Act; (2) wage discrimination under Title VII; and (3) disparate treatment under Title VII, the Equal Pay Act and the TCHRA.  (D.E. 29.)  Plaintiff filed a timely response.  (D.E. 32.)

On December 10, 2010, Defendant also filed a motion to strike certain portions of Plaintiff's summary judgment evidence.  (D.E. 33.)  Plaintiff filed her response on January 4, 2011, providing no explanation for her failure to respond within 21 days.  Because Plaintiff failed to timely respond, the motion is deemed unopposed.  See Fed. R. Civ. P. 12(a); L.R. 7.4.

## III.    MOTION TO STRIKE

The court first addresses Defendants' motion to strike certain portions of Plaintiff's summary judgment evidence.

### A.      Plaintiff's Statements Relating to Wrongful Termination

Defendant objects to those portions of Plaintiff's Affidavit complaining of her allegedly wrongful termination.  (D.E. 32 (depo.) at, e.g., ¶ 10) ("I was subjected to different terms and conditions of employment, and what I believe to be a wrongful termination of employment.")  Defendant correctly states that because Plaintiff's wrongful termination claims have been dismissed, (D.E. 28), she cannot now resurrect those claims.  However, Plaintiff's allegations about her termination are not, as Defendant urges, "completely irrelevant."  (D.E. 33 at 2.)  Rather, Plaintiff's termination is relevant to her description of the general working environment at NOV and to the Court's evaluation of the other adverse employment actions allegedly taken against Plaintiff.   Accordingly, Defendant's motion to strike these portions of Plaintiff's Affidavit is DENIED.

### B.      Portions of Affidavit Contradicting Prior Sworn Testimony

It is well-established that a party may not "defeat a motion for summary judgment using an affidavit that impeaches without explanation sworn testimony."  S.W.S. Erectors v. Infax, Inc., 72 F.3d 489, 495 (5th Cir. 1996) (citing Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 137 n.23 (5th Cir.), *cert. denied*, 506 U.S. 845, 113 S. Ct. 136, 121 L. Ed. 2d 89 (1992); Albertson v. T. J. Stevenson & Co., 749 F.2d 223, 228 (5th Cir. 1984)).  On the other hand, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment."   Id. at 496 (citing Clark v. Resistoflex Co., 854 F.2d 762, 766 (5th Cir. 1988)) (distinguishing between an affidavit that "clarifie[s] or amplifie[s] the facts by giving greater detail or additional facts not previously provided in the deposition[]" and an affidavit that "tells the same story differently.")

Defendant points to various alleged inconsistencies between Plaintiff's sworn Affidavit and her prior sworn deposition testimony, arguing that any portions of the Affidavit that conflict with the deposition testimony should be stricken.  (D.E. 33, p. 3.)  The Court evaluates each alleged inconsistency in turn.

### 1.      Addition of New Comparators

Defendant contends Plaintiff testified in her deposition that there are six male employees to whom she is comparing herself for purposes of Title VII and the Equal Pay Act, and that the portion of her Affidavit in which she attempts to add two new comparators (Jeff Carter and Brad Pawlak) should be struck from the record.  (D.E. 33, p. 4.)

During her deposition, Plaintiff was asked to make a list of all the males she claims made more than her for performing the same job.  Plaintiff indicated six males – Robert Pulido, Cody Pennell, Robert Caskey, Rodney Cooper, Layne Stubblefield, and Neil Fletcher.  (D.E. 32, p. 5; D.E. 29, Ex. 1 (Wojciechowski Depo.) at 86) (Q: "So, do you have names?" A: Robert Pudillo…Cody Pennell…Lane Stubblefield…" Q: "I need a list of everybody that you claim was a male that made more than you for performing the same job?" A: "Neil Fletcher, Robert Caskey, Rodney Cooper, that's it.")  Plaintiff did not mention Jeff Carter or Brad Pawlak until her December 3, 2010 Affidavit, which she submitted with her response to Defendant's motion for summary judgment.  (D.E. 32 Ex. A (Wojciechowski affidavit) at 4.)

However, these new comparators were both addressed in Defendant's own June 1, 2009 statement of position to the EEOC.  ( D.E. 32, Ex. C.)  Plaintiff did not "contradict" her deposition testimony by adding two new comparators in her response.  Rather, she merely supplemented her earlier deposition testimony, adding additional comparators in order to reflect all the comparators noted in Defendant's own statement to the EEOC.  See Clark., 854 F.2d at

766.  Accordingly, the list of comparators for Plaintiff's Title VII and the Equal Pay Act claims is not limited to the six male employees listed in Plaintiff's deposition, but may include Pawlak and Carter.  Defendants motion to strike these comparators is DENIED.

### 2.      Denial of Company Vehicle

Defendant argues Plaintiff's prior deposition testimony contradicts her Affidavit, where she contends NOV's policy would have mandated she be provided a company vehicle, because Plaintiff allegedly conceded in her deposition that she was not entitled to a company truck under the terms of NOV's policy. (D.E. 33 at 5.)  However, contrary to Defendant's assertion, Plaintiff admitted in her deposition that she was fairly reimbursed for all of her mileage, but nonetheless claimed that the policy would have allowed her to use a company vehicle because her mileage was about 2300 miles per month (over the 1200 mile a month limit indicated in NOV's policy, discussed below).  (D.E. 29, Ex. 2 (Wojciechowski depo.) at 45.)   This is consistent with her Affidavit's charge.  (D.E. 32, Ex. A (affidavit) at 4.)  Defendant's motion to strike is DENIED with respect to this portion of Plaintiff's Affidavit.

### 3.      Heavier Work Assignments

Defendant contends Plaintiff's Affidavit statement that certain NOV employees were given lighter work assignments is contradicted by her prior deposition testimony.  Specifically, Defendant contends that in her deposition Plaintiff stated that with respect to this claim she was referring "only to outside sales (account managers) and inside sales employees, not other sales managers."  (D.E. 33, p. 6.)   However, Plaintiff did not state in her deposition that she was giving a complete list of the men who had lighter work assignments.  (D.E. 29, Ex. 2 (Wojciechowski depo.) at 96) (Q: "Well, what male employees are you saying had lighter work assignments, with assistance, than you?" A: "The account managers."  Q: "Okay.  Anyone else?"

A: The account managers, the inside salespeople.  You know, I – I don't know, I can only speak for – for my district.")  Plaintiff's Affidavit, stating that she "had more duties than [her] male counterparts" merely supplements the information provided in her deposition.  (D.E. 32, Ex. A (affidavit) at 1-2.)   It does not "tell a different story."  Clark, 854 F.2d at 766.  Defendant's motion to strike is DENIED with respect to this portion of Plaintiff's Affidavit.

### 4.      Pay Increases and Performance Reviews

Defendant contends Plaintiff's Affidavit statement that her male counterparts received performance reviews and pay increases contradicts her prior deposition testimony, where she stated that she did not know who had received performance reviews, (D.E. 29 (depo.) at 83), and did not know which sales managers had received pay raises.  (Id. at 85.)  Plaintiff's contention in her Affidavit merely supplements the record; it does not contradict Plaintiff's prior story.  Accordingly, Plaintiff's statements in her Affidavit that certain individuals received performance reviews and pay increases are not to be disregarded for this reason.  (D.E. 32 (affidavit) at 2.)  Defendant's motion to strike these statements is DENIED.

### C.      Plaintiff's Responses to the EEOC Inquiries

Defendant seeks to strike Plaintiff's "Exhibit B," which consists of her "Response to EEOC Inquiries," on the ground that her answers to the EEOC inquiries are not signed or sworn and do not constitute an affidavit.  (D.E. 33 at 6.)[1]

An affidavit opposing a motion for summary judgment must be sworn in order "to raise a fact issue precluding summary judgment." Nissho-Iwai American Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir.1988).  An unsworn declaration may substitute for an affiant's oath if it is made

---

[1] The Fifth Circuit has held that while the business records hearsay exception applies to the EEOC's report and determination, **"the underlying material collected during the EEOC investigation…the individual evidence contained in the file must be [sic] admissible on its own grounds**." Cruz., 213 Fed. Appx. at 332 (emphasis added).

"under penalty of perjury" and is "verified as true and correct." Id. (citing 28 U.S.C. § 1746); see also Washington v. Moore, 990 F.2d 626, 626 (5th Cir.1993).  Parties must strictly comply with the requirement of sworn statements.  See Gordon v. Watson, 622 F.2d 120, 123 (1980); see also Brady v. Blue Cross and Blue Shield of Texas, Inc., 767 F.Supp. 131, 135 (N.D.Tex.1991).

Here, Plaintiff states in her signed and sworn Affidavit that all of her statements in her responses to the EEOC questions are true and correct statements and that they are "incorporated herein as part of my response and affidavit."    (D.E. 32, Ex. A (affidavit) at 3-4.) Because Plaintiff has sworn her statements to the EEOC under penalty of perjury and has verified that they are true and correct, the statements may be construed as sworn affidavits.  Kline, 845 F.2d at 1306; see also Wong v. SBC Smart Yellow Pages, 2005 WL 1293717, *5 (W.D.Tex. May 31, 2005) (denying defendant's motion to strike a letter written by plaintiff to the EEOC and included in the group of attachments to plaintiff's affidavit, even though the letter itself was unsigned and unsworn, because "plaintiff has authenticated it through her affidavit."); Lohn v. Morhan Stanley DW, Inc., 652 F.Supp.2d 812, 826 (S.D. Tex. 2009) (declining to strike on summary judgment sworn statements taken in conjunction with EEOC investigation merely because defendant was unable to cross-examine affiant at time statements were taken); Lorenz v. Walmart Stores, Inc., 2006 WL 1562235, *6 (W.D. Tex. Aug. 26, 2009) (declining to strike on summary judgment defendant's sworn statements submitted to the EEOC when the statements were consistent with defendant's other affidavits).   Compare Cruz v. Aramark Servs., 213 Fed. Appx. 329, 332 (5th Cir. 2007) (unpublished) (finding the district court properly excluded letters and statements in Plaintiff's EEOC file because they were unsworn and thus did not meet the requirements of Federal Rule of Civil Procedure 56.)

When considered as a sworn part of her Affidavit, Plaintiff's Reponses to the EEOC's Inquiries are not inappropriate summary judgment evidence to the extent that they comply with the general rules respecting affidavits.  Pursuant to Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."  Fed. R. Civ. P. 56(c)(4).  Documents containing hearsay statements, that would not be admissible as testimony at trial, may not be set forth in an affidavit to support a motion for summary judgment.  H. Sand & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-455 (2d Cir.1991); see also Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976).  Thus, the issue is whether Plaintiff's EEOC Responses are based on personal knowledge and set forth facts that would be admissible in evidence.

Defendant objects that Plaintiff's EEOC Responses contain hearsay that would be inadmissible under Fed. R. Civ. P. 801, without any exception to the hearsay rule.  (D.E. 33 at 7.) There are thirteen (13) responses included in Plaintiff's exhibit.  (D.E. 32 (Ex. B) (EEOC responses).)  Defendant does not point out individual responses allegedly containing hearsay, and the Court may not simply strike the entire challenged document.  See Salas v. Carpenter, 980 F.2d 299, 304 (5th Cir. 1992)  ("The court should disregard only the inadmissible portions of a challenged affidavit.")

Accordingly, except where the Court finds that certain individual responses clearly contain hearsay or are not based upon personal knowledge, the Court will consider Plaintiff's EEOC Responses because they have been incorporated by Plaintiff into her sworn Affidavit.

D.      **Statements in Plaintiff's Affidavit**

As said, pursuant to Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).  The substance of an affidavit must demonstrate the affiant has personal knowledge of the facts contained therein. Schneider v. OG & C Corp., 684 F.Supp. 1269, 1271 n. 6 (S.D.N.Y.1988); Copiers Typewriters Calculators, Inc. v. Toshiba Corp., 576 F.Supp. 312, 315-316 (D.Md.1983).  If the affidavit fails to meet any of the procedural requirements, a motion to strike that sets forth specific objections is the proper method for the opposing party to challenge the affidavit.  Rushing v. Kansas City Southern Ry. Co., 185 F.3d 496, 506 (5th Cir.1990) (superceded by statute on other grounds as noted in Mathis v. Exxon Corp., 302 F.3d 448, 459 n. 16 (5th Cir.2002)).  However, "[t]he rule is settled that on a motion for summary judgment a court will disregard only the inadmissible portions of a challenged affidavit offered in support of or opposition to the motion and will consider the admissible portions in determining whether to grant or deny the motion." Lee v. National Life Assurance Co., 632 F.2d 524, 529 (5th Cir.1980).

Defendant contends certain portions of Plaintiff's Affidavit should be struck because the assertions are not based on personal knowledge and contain inadmissible hearsay.  (D.E. 33, at 7-8.).  The Court evaluates each objection in turn.

Defendant's primary objection is to Plaintiff's statement that Robert Caskey was given Plaintiff's former job position and title "but at what is believed to be a higher rate of pay than Plaintiff had received for performing the same or greater duties than Mr. Caskey."  (D.E. 32 at

5.)  Defendant argues Plaintiff has not demonstrated she has personal knowledge of Caskey's duties or rate of pay in her former position.  (D.E. 33 at 7-8.)

The Court agrees.  Plaintiff had already departed from her job at NOV when Caskey was assigned her former duties.  Moreover, Plaintiff admitted in her deposition that she had no personal knowledge of Mr. Caskey's work following her departure from NOV.  (D.E. 29, Ex. 2 (Wojciechowski depo.) at 145-146.) (Q: "[Y]ou told me earlier that you really didn't know what Robert Caskey was doing, other than what other people told you, right?"  A: "Right, but …I know he's the sales manager."  Q: "Do you know whether [Caskey's] duties are different from the ones you were doing?" A: "I'm – no, I don't know that; but based on the job description that I have as – for a sales manager, the same one you have, probably the same duties …" Q: "But you don't know?" A: "I'm assuming." Q: "Correct?" A: "No, I don't know.")  "[C]onclusory assertions cannot be used in an affidavit on summary judgment."  Salas v. Carpenter, 980 F.2d 299, 305 (5th Cir. 1992) (citing Broadway, 530 F.2d at 660).

Because Plaintiff fails to demonstrate she has personal knowledge of Caskey's role and pay, Defendant's motion to strike Plaintiff's statements in her response and Affidavit regarding Caskey's pay and job is GRANTED.  Said statements are struck from the record.

Defendant also objects, on the ground of lack of personal knowledge, to Plaintiff's statements that when she assumed the Sales Manager position she performed the same duties as other male counterparts in her position and that the duties she performed were substantially the same as other male Sales Managers' duties.  (D.E. 32, Ex. A (affidavit) at 1-2.)  An employee can generally be expected to have some personal knowledge of conditions and events during his or her employment.  See E.E.O.C. v. Eagle Quick Stop, Inc., 2007 WL 672101, * 1 (S.D. Miss. February 28, 2007) (finding that because affiants were "simply relating what they saw, heard or

experienced while employees at Eagle Quick Stop" "the requirement of personal knowledge [was] met.")  In this case, the record indicates Plaintiff had personal knowledge of both her own duties and the duties performed by other employees in her region because her position as Sales Manager required her to oversee the sales of other NOV employees.   (D.E. 29 (Depo.) at 52-58, 63-69.)  As such, Defendant's motion to strike these statements is DENIED.

Defendant objects on the ground of hearsay to Plaintiff's statement that when she asked for a raise, she was told she was making enough and "shouldn't have a problem paying another babysitter" because of all her extra work.  (D.E. 32, Ex. A (affidavit) at 2.)  However, this statement is admissible as a party admission because it appears to have been made by an employee of Defendant.   Fed. R. Evd. 801(d)(2) ("[a] statement is not hearsay if ... [t]he statement is offered against a party and is the party's own statement, in either an individual or a representative capacity...[or] a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship[.]"); see also Jones v. Williams Sonoma, Inc., 2005 WL 3289361, *4 (N.D. Miss., December 05, 2005)  (declining to exclude statements in sworn affidavit of plaintiff's co-worker allegedly made by Williams Sonoma managers in the course and scope of their duties because the statements "appear[ed] to constitute non-hearsay admissions by a party opponent.") Defendant has not contended the statement was not made by a NOV employee.  Accordingly Defendant's motion to strike this statement is DENIED and said statement is not struck from the record.

Defendant objects that certain of Plaintiff's contentions – such as Plaintiff's statement that she "believ[es] [she] has been discriminated against because [she] is female" –  are based on Plaintiff's "subjective beliefs" and as such are inadmissible.  (D.E. 33 at 9.)  However, that fact that Plaintiff's statements are based on her subjective beliefs does not alone make her statements

inadmissible.  An employee's subjective belief that she has been the victim of discrimination is insufficient to create an inference of discriminatory intent.  <u>Lawrence v. Univ. of Tex. Med. Branch at Galveston</u>, 163 F.3d 309, 312, 313 (5th Cir.1999).  But Plaintiff's belief that she was discriminated against simply creates a potentially material factual dispute regarding this issue, and Defendant's objection goes to the weight rather than the admissibility of the evidence.  <u>See Eagle Quick Stop, Inc</u>., 2007 WL 672101 at *1.  As such, Defendant's motion to strike Plaintiff's personal beliefs that she was discriminated against is DENIED, and these opinions are not struck from the record.

Defendant lastly objects to Plaintiff's assertion in her Affidavit that she suffered stress, headaches and depression during work and would become ill because of mistreatment during her employment. (D.E. 32, Ex. A (affidavit) at 4.)  This assertion clearly conflicts with Plaintiff's prior deposition testimony, stating Plaintiff became ill and suffered symptoms of stress only after she was terminated.  (D.E. 33, Ex. 1 (depo.) at 129-130) (Q: "When…did you first start experiencing loss of sleep?" A: "When I lost my job."…Q: "[W]hen did you first start experiencing loss of appetite?" A: "At the same – around the same time." Q: "The time of your termination?" A: "Yes."  Q: "And headaches?" A: "Yes." Q: "Time of termination?" A: [nod], etc.)  Accordingly, Defendant's motion to strike Plaintiff's assertion that she suffered these symptoms prior to losing her job is GRANTED.

## IV.    MOTION FOR SUMMARY JUDGMENT

### A.    Summary Judgment

Under Federal Rule of Civil Procedure 56(a), "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment

if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

Pursuant to Fed. R. Civ. P. 56(c)(1), "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

On summary judgment, "[t]he moving party has the burden of proving there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law." Rivera v. Houston Indep. Sch. Dist., 349 F.3d 244, 246 (5th Cir. 2003); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "the non-moving party must show that summary judgment is inappropriate by setting forth specific facts showing the existence of a genuine issue concerning every essential component of its case." Rivera, 349 F.3d at 247. The nonmovant's burden "is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Willis v. Roche Biomedical Labs., Inc., 61 F.3d 313, 315 (5th Cir. 1995); see also

Brown v. Houston, 337 F.3d 539, 541 (5th Cir. 2003) (stating that "improbable inferences and unsupported speculation are not sufficient to [avoid] summary judgment").  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the non-moving party, no reasonable jury could return a verdict for that party.  Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

**B.      Wage Discrimination Under the Equal Pay Act**

The Equal Pay Act proscribes discrimination "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1).

"[I]n order to establish a claim under the Equal Pay Act, the plaintiff must show (1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) that she was paid less than members of the opposite sex."  Jones v. Flagship Int'l, 793 F.2d 714, 722-723 (5th Cir. Tex. 1986).  To establish that her male counterparts engage in "equal work," the plaintiff need only prove that the "skill, effort and responsibility" required in the performance of the jobs is "substantially equal."   Id. (citing Pearce v. Wichita County, City of Witchita Falls, Texas Hospital Bd., 590 F.2d 128, 133 (5th Cir. 1979)). "The Act necessarily requires a plaintiff to compare her skill, effort, responsibility and salary with a person who is or was similarly situated."  Id.

Once the plaintiff shows that he or she is paid less than an employee of the opposite sex for substantially equal work, the burden of proof shifts to the employer to show that the

differential is justified under one of the Act's four exceptions.  Plemer v. Parsons-Gilbane, 713 F.2d 1127, 1136 (5th Cir.1983).  The Act provides exceptions for disparate wage payments "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality; or (iv) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1). These exceptions "are affirmative defenses on which the employer has the burden both of production and of persuasion." Plemer, 713 F.2d at 1136.

### 1.      Prima Facie Case – Equal Work, Disparate Pay

As the parties do not dispute that Defendant qualifies as an "employer" under the Equal Pay Act, see 29 U.S.C. § 203(d) (defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee. . ."), the  first issue before the Court is whether the proposed comparators worked in positions requiring "equal skill, effort and responsibility under similar working conditions" as Plaintiff.  29 U.S.C. § 206(d)(1).  In making the "equal work" assessment, position titles or descriptions should be considered, but are not determinative without corroborating evidence of actual job content.  See EEOC v. Sears, Roebuck & Co., 839 F.2d 302, 346 (7th Cir. 1988); see also Brobst v. Columbus Serv. Int'l, 761 F.2d 148, 155 (3d Cir. 1985) (the central issue is job content and not the name under which the position was classified).  A common approach is to determine whether the jobs to be compared have a common core of tasks and then ascertain whether the differing or additional tasks make the work "substantially different."  See Brobst, 761 F.2d at 156.  Ultimately, whether two jobs "require equal skill, effort, and responsibility, and are performed under similar working conditions is a factual determination."  Fallon v. State of Illinois, 882 F.2d 1206, 1208 (7th Cir. 1989). "Given the fact intensive nature of the inquiry, summary judgment will often be inappropriate." Brobst, 761 F.2d at 156.

In this case, Plaintiff alleges that as Sales Manager she performed the same duties as other male counterparts in her position and that she was paid less than those counterparts.  (D.E. 32, Ex. 1 (Wojciechowski affidavit) at 1-2.)  As explained above, she identifies as comparators the following individuals:  Robert Pulido (account manager), Cody Pennell (account manager), Robert Caskey (the account manager whom Plaintiff alleges was given Plaintiff's former job position and title), Rodney Cooper (account manager), Layne Stubblefield (Sales Manager), and Neil Fletcher (Sales Manager); Brad Pawlak (Sales Manager); and Jeff Carter (Sales Manager). (D.E. 32, p. 5; D.E. 29, Ex. 1 (Wojciechowski Depo.) at 86; D.E. 32, Ex. C (Defendant's Statement of Position to the EEOC.))

Defendant does not dispute that Plaintiff has satisfied the third requirement of the Equal Pay Act: Plaintiff was paid a yearly salary of $37,440 in her position as Sales Manager. (Id. at 33.)   All comparators were paid well over $50,000 per year at certain points during their employment.  (D.E. 29, p. 11-14.)  However, Defendant contends none of these employees performed "equal work" and are thus improper comparators under the Equal Pay Act.  (D.E. 29 at 7.)

### a.    Account Managers

As to Robert Pulido, Cody Pennell, Robert Caskey, and Rodney Cooper – all outside sales people or "account managers" – the summary judgment evidence establishes that the "skill, effort and responsibility" required in the performance of their jobs was not "substantially equal" to Plaintiff's.   Jones, 793 F.2d at 722-723.  When asked in her deposition whether she was "claiming in this lawsuit that the account manager position [was] the same job that [she was] doing" Plaintiff responded: "No.  I'm not saying that was the same job I – I was doing; but I'm saying that it was a lot more work, and it was a 24-hour job."  (Id. at 87.)  However, she

conceded that the account manager job was different in that it "[i]nvolved different responsibilities[.]" (Id.)

A comparison of the "core tasks" performed by the "account managers" and the Sales Managers demonstrates they involved "substantially different" work. See Brobst, 761 F.2d at 156. When asked to describe the duties of the "account managers," Plaintiff explained that they were "primarily responsible for outside sales" (Id. at 64.) She stated:

> [T]heir job was to keep existing customers, go out an call on the rigs that they had tools already on or we had tools already on, as well as obtain new businesses and go see, you know, new rigs that come out and try to sell them our tools, compete with price, and all that…their job was to sell and make money.

(Id. at 64.) She conceded they were often called on at night to go out to the rigs, sometimes a few hours away from their homes. (Id. at 68-69.)

In contrast, according to Plaintiff, her job constituted overseeing the sales activities of the inside and outside sales force. She stated in her deposition that her job was "[t]o make sales; to make sure the sales team was doing their job and selling their tools; and making sure we exceeded our monthly budget every month." (D.E. 29, Ex. 2 (Wojciechowski Depo.) at 52.) She oversaw anywhere from eight to nine outside sales people and seven inside sales people. (Id. at 53.) She would assist the sales people when they had billing troubles and check to make sure billing was accurate. (Id. at 57.) She "did the guys' budgets, expenses, making sure that they weren't – their expenses weren't too high[.]" (Id.)

However, Plaintiff did not engage in outside sales herself. Although she went out on call "a couple times for a couple big projects" and "go to the offices to talk to the engineers about the tools, and the projects, and kind of work out deals with them," she was not responsible for going out to the oil rigs and making sales at the rigs. (Id. at 70-71.) Generally, she worked an 8:00 a.m. to 5:00 p.m. schedule. (Id. at 50.)

The difference between the roles of the Sales Manager and the account managers is further highlighted by Plaintiff's statement that she would not have been interested in doing the account manager job herself:

> Q: Were you ever interested in the account manager position –
> A: No.
> Q. –for yourself?
> A: No.
> Q: Why not?
> A: Because it was just not something that I wanted to do.
> Q: You weren't interested in doing outside sales?
> A: No.  Not – not for them.  I mean, not like that.
> Q: I imagine that type of schedule might be difficult, as well, since you were in school?
> A: Well, not only the schedule, just the –you know, the environment of – of an actual rig."

(Id. at 70.)

Plaintiff's statements clearly establish that Plaintiff, as Sales Manager, oversaw the sales of the account managers who were primarily responsible for outside sales.  In contrast, the account managers went out to the rigs to make sales on a regular basis, sometimes at odd hours. Plaintiff oversaw their accounts and did their billing.  But she did not herself make sales and never went out to the rigs.

Accordingly, the Court finds the account managers were not engaged in "equal work" requiring "equal skill, effort and responsibility under similar working conditions," Jones, 793 F.2d at 722-723, and are not appropriate comparators under the Equal Pay Act.  29 U.S.C. § 206(d)(1).[2]

### b.      Sales Managers

---

[2] Furthermore, any pay differential between Plaintiff's pay and that of "account managers" would be easily justified based on factors other than sex.  29 U.S.C. § 206(d)(1).  To name a few: the difficult working conditions on the rigs, the amount of travel, the irregular schedule, the potential for generation of revenue if the account managers garnered customers for the company.

The other comparators, Layne Stubblefield, Neil Fletcher, Brad Pawlak and Jeff Carter were not "account managers."  Rather, they had the same job title of "Sales Manager."  As said, job title is not controlling.  The issue is whether their work was "substantially different" from Plaintiff's.  See Brobst, 761 F.2d at 155-156.  Defendant contends that, despite the identity in job title, Stubblefield's and Fletcher's jobs were substantially different from Plaintiff's and that they are not proper comparators under the Act.  (D.E. 29, p. 11-14.)[3]

Stubblefield performed dual roles as both outside salesperson and Sales Manager.  He visited the customer's rigs to make sales after hours and on weekends.  His outside sales duties comprised at least 25% of his job duties.  (D.E. 29, Ex. 1 (Jurecek affidavit) at ¶¶15-16.)  Mr. Stubblefield had at least seven years of experience in oilfield sales prior to joining NOV.  (Id.)

Fletcher had previously trained in outside sales before being promoted to the position of Sales Manager in NOV's Rosenberg/Houston District, NOV's largest District in the United States.  Fletcher was required to work at two different facilities at one time and directly managed 27 other employees.  (Id. at ¶18-20.)

The Court finds issues of fact remain as to whether as to whether Stubblefield and Fletcher's jobs required "equal skill, effort, and responsibility, and [were] performed under similar working conditions" as Plaintiff's.  See Fallon, 882 F.2d at 1208; Brobst, 761 F.2d at 156.  Although it appears from Jurecek's affidavit that Stubblefield and Fletcher performed additional duties beyond those performed by Plaintiff – including many of the same duties as the of the "account managers" – jobs may be equal even though one sex is given extra duties if the other sex also performs extra duties of equal skill, effort, and responsibility, or if the extra duties

---

[3] Defendant does not address Pawlak and Carter in its motion because Defendant sought to strike these comparators from the record.  The Court here addresses Defendant's arguments regarding Fletcher and Stubblefield only.  But the same principles apply to Pawlak and Carter.  In sum, the Court finds genuine issues of fact remain as to whether the "skill, effort and responsibility" required in the performance of Pawlak and Carter's jobs was "substantially equal" to Plaintiff's, making them proper comparators under the Equal Pay Act.  Jones, 793 F.2d at 722-723.

take little time and are only of peripheral importance.  See EEOC v. Central Kan. Med. Ctr., 705 F.2d 1270, 1272 (10th Cir. 1983).  Stubblefield's work as an outside sales person was only 25% of his job – the rest was as a Sales Manager, like Plaintiff.  (Jurecek affidavit) at ¶¶15-16.) Fletcher supervised a higher volume of salespeople than Plaintiff – 27 as opposed to 16 – but the common core of tasks they performed in overseeing the sales activities of other employees were not substantially different.  See Brobst, 761 F.2d at 156.

As to Stubblefield's and Fletcher's greater levels of experience in the oil industry, courts have held that a comparator's prior experience is not relevant to the 'substantially similar' inquiry."  Mulhall v. Advance Sec., 19 F.3d 586, 592 (11th Cir. 1994). "Only the skills and qualifications actually needed to perform the jobs are considered." Id.  (As discussed below, prior experience may still be relevant to establishing gender neutral justifications for pay discrepancy.)

Accordingly, Plaintiff has succeeded in raising an issue of fact as to whether the "skill, effort and responsibility" required in the performance of Stubblefield's and Fletcher's jobs was "substantially equal" to Plaintiff's.  Jones, 793 F.2d at 722-723.

### 2.    Affirmative Defense – Factors Other Than Gender

Under the Equal Pay Act, if Plaintiff can establish a *prima facie* case, the burdens of production and persuasion shift to Defendant NOV to demonstrate as an affirmative defense that the differences in pay are justified by one of the four exceptions specified above.  See Peters, 818 F.2d at 1153.  "Any factor other than sex" is a general, catch-all exception.  Perales v. Am. Ret. Corp., 2005 U.S. Dist. LEXIS 22630, * 21 (W.D. Tex. Sept. 26, 2005)  (citing Irby v. Bittick, 44 F.3d 949, 956 n.10 (11th Cir. 1995) (citing Glenn v. General Motors Corp., 841 F.2d 1567, 1571 (11th Cir.), cert. denied, 488 U.S. 948, 102 L. Ed. 2d 367, 109 S. Ct. 378 (1988))).   The

exception has been found to apply "when the disparity results from unique characteristics of the same job; from an individual's experience, training or ability; or from special exigent circumstances connected with the business." Id. (citing Glenn, 841 F.2d at 1571).  "Accordingly employers typically do not violate the EPA where the payment of disparate wages was based on an applicant's credentials or experience, plus the demand that the prospective employer match her previous salary." Id.

NOV contends that any salary disparities that exist between Plaintiff and Stubblefield and Fletcher are justified by legitimate factors other than gender.  In his affidavit, Jurecek states that the factors he considered in making the decision to provide Stubblefield with two merit based increases (to a salary of $52,499.90 in January 2008 and to a salary of $65,000 in July 2008), had nothing to do with gender.  (D.E. 29, 12-13, Ex. 1 (Jurecek affidavit), ¶¶ 15-16.)[4] Similarly, he states that his decision to give Mr. Fletcher a salary increase to $52,450 per year in April 2008 and a merit increase to $62,617.50 in the third quarter of 2008 were unrelated to Fletcher's gender. (Id. at ¶¶18-20.) Rather, he indicates that the wage differentials for Stubblefield and Fletcher were justified primarily by their prior experience inside and outside NOV, the amount of travel involved in the job, irregular hours, and their records of exceptional performance in their roles as Sales Manager.   (Id. at 13.)  Also, as said, Stubblefield held dual roles as both outside salesperson and sales manager, and generated additional revenue as an outside

---

[4] Plaintiff contends that Jurecek's affidavit should be disregarded altogether because he is an "interested witness" on behalf of Defendant, and that all credibility determinations must be reserved for the fact-finder.  (D.E. 32 at 7.) Plaintiff cites the Supreme Court's holding in Reeves v. Sanderson Plumbing Prods., Inc. 530 U.S. 133, (2000) (in reviewing the summary judgment evidence, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.")  However, contrary to Plaintiff's assertion, the evidentiary standards announced in Reeves do not require disregarding Jurecek's affidavit entirely.  See Sandstad v. CB Richard Ellis, Inc., 309 F.3d 893, 898 (5th Cir. 2002) (where Fifth Circuit disagreed with similar argument that Reeves required disregarding as interested witness testimony all testimony by managers involved in employment decision, as this would "in effect eliminate [the employee's] burden to show that [defendant's] explanation is pretextual.")  Jurecek's affidavit is appropriate summary judgment evidence respecting discriminatory intent.

salesperson. (<u>Id</u>. at ¶¶ 15-16.)  And Fletcher managed more salespeople than Plaintiff.  (<u>Id</u>. at ¶¶ 18-20.)

In addition, Defendant contends there was a pay freeze beginning in late December of 2008 or early January of 2009, precluding pay increases for Sales Managers like Plaintiff.  (<u>Id</u>. at ¶ 7.)

Defendant's given justifications fall within the recognized exceptions under 29 U.S.C. § 206(d)(1). "However, even a legitimate, non-discriminatory reason for the pay differential will not justify summary judgment where plaintiff is able to show that defendant's proffered reasons are a pretext for gender discrimination. <u>Perales</u>, 2005 U.S. Dist. LEXIS 22630 at * 22.  After considering the evidence as a whole, the Court finds Jurecek's statements do not establish Defendant's lack of discriminatory intent as a matter of law because the summary judgment record lends some support to Plaintiff's position that Defendant's decision to pay her male counterparts more was not motivated solely by gender neutral factors.

First, Plaintiff contends in her Affidavit that when she requested a performance review (which she states often came with pay raises in the company), she was told that she "was making enough and that '[she] shouldn't have a problem paying another babysitter' because of all the extra work that [she] put in."  (D.E. 32, Ex. A (Wojciechowski affidavit) at 2.)  Although this remark is not on its own sufficient proof of discriminatory motive, it raises a genuine issue of fact as to whether Defendant's justification was pretextual, fit for review by a fact-finder. <u>Reeves</u>, 530 U.S. at 151; <u>Anderson</u>, 477 U.S. at 255.

Second, as discussed below, there are certain inconsistencies in Defendant's contention that there was a pay freeze for all Sales Managers.  Pretext may be established by showing that

the employer's proffered explanation is false or "unworthy of credence." <u>Reeves</u>, 530 U.S. at 143.

Because of the potentially sexist remark and the inconsistency in Defendant's explanation for the lower wages, summary judgment on Plaintiff's Equal Pay Act claims is not appropriate. <u>See</u> <u>Fierros v. Texas Dept. of Health</u>, 274 F.3d 187, 190 (5th Cir.2001) (where the Fifth Circuit explains that, in general, summary judgment " 'is not favored in claims of employment discrimination.'") (internal citations omitted).

### C.   Wage Discrimination Under Title VII

Title VII prohibits discrimination in compensation based on an individual's sex. See 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case for pay discrimination under Title VII, the plaintiff must show that he or she occupies a job similar to that of higher paid workers of the opposite sex. <u>Meeks</u>, 15 F.3d at 1019.  Once a prima facie case is established, the defendant must articulate a "legitimate, non-discriminatory reason for the pay disparity." <u>Id</u>.  "This burden is 'exceedingly light'; the defendant must merely proffer non-gender based reasons, not prove them.'" <u>Id</u>. (quoting <u>Miranda v. B & B Cash Grocery Store, Inc</u>., 975 F.2d 1518, 1529 (11th Cir.))  Once such a justification is advanced, the plaintiff must demonstrate by a preponderance of the evidence that the employer had a discriminatory intent.  <u>Id</u>.  In other words, the plaintiff must show that "a discriminatory reason more likely than not motivated [the employer] to pay her less." <u>Id</u>. (quoting <u>Miranda</u>, 954 F.2d at 1529).  The plaintiff has the ultimate burden to prove that sex is a significant factor in the employer's wage differentials. <u>See</u> <u>Peters</u>, 818 F.2d at 1154. Such proof may be direct or circumstantial. <u>See</u> <u>Meeks</u>, 15 F.3d at 1019.

In this case, as discussed above, Plaintiff has succeeded in raising a as to the similarity of her job with those of other Sales Managers, Stubblefield and Fletcher.[5]  Plaintiff has also met her burden under Title VII to raise an issue of fact as to whether "a discriminatory reason more likely than not motivated [the employer] to pay her less."  Miranda, 954 F.2d at 1529.   As discussed above, the record lends some support to Plaintiff's position that Defendant had discriminatory intent, raising an issue of fact as to motive, fit for review by a fact-finder. Reeves, 530 U.S. at 151; Anderson, 477 U.S. at 255.  For her Title VII claim, Plaintiff retains the ultimate burden to prove that sex was significant factor in the wage differentials between her and Stubblefield and Fletcher.[6]  See Peters, 818 F.2d at 1154.[7]

### D.  Disparate Treatment Claims

#### 1.  Prima Facie Case

To establish a prima facie case of discrimination with respect to her allegations of disparate treatment under Title VII, Plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for her position; (3) that she suffered an adverse employment action; and (4) that other, similarly situated co-workers outside the protected class were treated differently. Hart v. Life Care Ctr. of Plano, 243 Fed. Appx. 816, 818 (5th Cir. 2007) (citing Okoye v. Univ. of Tex. Houston Health Sci. Ctr. 245 F.3d 507, 512-13 (5th Cir. 2001)). "[T]he law governing claims under the TCHRA and Title VII is identical."  Shackelford v. DeLoitte &

---

[5] "Title VII incorporates a more relaxed standard of similarity between male and female-occupied jobs." Miranda, 975 F.2d at 1529 n.11. Under Title VII, the "plaintiff is not required to meet the exacting standard of substantial equality of positions set forth in the Equal Pay Act." Id.; see Gunther, 452 U.S. at 178-79, 181. To be actionable under Title VII, the work performed by the female employee need only be similar or comparable to that of a higher paid male employee. See Meeks, 15 F.3d at 1019; Miranda, 975 F.2d at 1529.

[6] As said in note 3, the same principles apply to Pawlak and Carter.

[7] An unequal pay claim is generally analyzed under the same standard, whether the claim is brought under Title VII or the EPA. Lenihan v. Boeing Co., 994 F. Supp. 776, 797 (S.D. Tex. 1998) (citing Washington County v. Gunther, 452 U.S. 161,  168 (1981); Tomka v. Seiler Corp., 66 F.3d 1295, 1312 (2d Cir.1995); EEOC v. J.C. Penney Co., Inc., 843 F.2d 249, 252 (6th Cir.1988)).  "Unlike an EPA claim, however, to prevail on a wage discrimination claim under Title VII, the plaintiff must prove that the employer acted with discriminatory intent." Id (citing, e.g.,  Meeks v. Computer Assoc. Int'l, 15 F.3d 1013, 1019 (11th Cir.1994); Peters, 818 F.2d at 1153-54.

Touche, LLP, 190 F.3d 398, 404, n. 2 (5th Cir. 1999) (citing Colbert v. Georgia-Pacific Corp., 995 F. Supp. 697 (N.D. Tex. 1998)).

### 1.    "Adverse Employment Actions"

In order to succeed in her disparate treatment claims, Plaintiff must show she suffered one or more "adverse employment actions."  In the context of discrimination claims,[8] "adverse employment reactions" are defined by the Fifth Circuit as "ultimate employment decisions," such as "hiring, granting leave, discharging, promoting and compensating."   Walker v. Thompson, 214 F.3d 615, 629 (5th Cir. 2000); see also Pierce v. Texas Department of Crim. Justice, Inst. Div., 37 F.3d 1146, 1149 (5th Cir. 1994) ("Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands.").

In this case, Plaintiff identifies seven employment decisions by NOV that she alleges were motivated by gender discrimination: (1) heavier work assignments (2) failure to provide training (3) denial of a company vehicle (4) denial of company credit card (5) failure to invite Plaintiff on hunting trips; (6) refusal to provide Plaintiff performance reviews; and (7) refusal to give Plaintiff a pay raise.  The Court examines each in turn.

### a.    Heavier Work Assignments

Plaintiff alleges she received heavier work assignments than similarly situated male employees.  The Fifth Circuit has indicated that giving an employee heaving work assignments does not constitute an "ultimate employment decision" subject to Title VII discrimination

---

[8] In McCoy v. City of Shreveport,  the Fifth Circuit explained that, in Burlington Northern & Santa Fe Railway v. White, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006), the Supreme Court abrogated this approach in the **retaliation** context in favor of the standard used in the Seventh and D.C. Circuits, which defines an adverse employment action as any action that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination."  492 F.3d 551, 559 (5th Cir. 2007).   However, the Fifth Circuit clarified that "our precedent recognizing only 'ultimate employment decisions' as actionable adverse employment actions remains controlling for Title VII discrimination claims and therefore continues to justify summary judgment dismissal of [plaintiff's discrimination claims[.]"  Id. at 560 (holding that police officer placed on paid administrative leave did not suffer an adverse employment action for purposes of discrimination claim).

scrutiny.  See Hart, 243 Fed. Appx. at 818[9]; see also Benningfield v. City of Houston, 157 F.3d 369, 376-377 (5th Cir. 1998) (being assigned an unusually heavy work load involves administrative matters and is not adverse employment action).   Accordingly, Plaintiff's disparate treatment claims under TCHRA and Title VII based on this action fail.

### b.      Failure to Provide Training

Plaintiff alleges her male counterparts were given training that she was denied. Plaintiff's theory based on failure to provide her training also fails because the Fifth Circuit has held that "a refusal to train is not an adverse employment action under Title VII." Hollimon v. Potter, 365 Fed. Appx. 546, 549 (5th Cir. 2010) (citing Shackelford v. Deloitte & Touche, LLP, 190 F.3d 398, 406-07 (5th Cir. 1999)).

### c.      Denial of Company Vehicle

Plaintiff contends that although she requested use of a company vehicle she was "repeatedly denied a company vehicle," even though a company vehicle was offered to other male managers and even though "the policy would have required that [she] be provided a vehicle because [she] exceeded the minimum mileage requirements according to company policy." (D.E. 32, Ex. A (December 3, 2010 affidavit) at 3.)   NOV contends the policy did not require that Plaintiff receive a company vehicle and that, in any case, the decision not to give her one had nothing to do with Plaintiff's gender.  (D.E. 29, p. 20.)  Plaintiff admits that that NOV gave her a car allowance of $400 and that she was paid mileage for the trip she made with her own vehicle, according to the terms of NOV's Mileage Reimbursement Policy.  (D.E. 29, Ex. 2

---

[9] In Hart, the Fifth Circuit held a plaintiff alleging race discrimination failed to prove he suffered an "adverse employment action" based on actions including issuing him a disciplinary warning for reporting late to work; denying him a day off; denying a request for overtime; denying him a shift change; and assigning him more difficult tasks than his Hispanic co-workers. 243 Fed. Appx. at 818;

(Wojciechowski Depo.) at 41-43.)  However, the parties dispute whether the policy would have required Plaintiff to obtain use of a company vehicle.[10]

In any case, the Fifth Circuit has previously held that failure to provide travel reimbursement allegedly due to an employee "is an administrative action" and does not constitute an "adverse employment action."  Benningfield, 157 F.3d at 376-77.  Accordingly, Plaintiff's TCHRA and Title VII claims based on NOV's allegedly unfair denial of a company vehicle fail.

### d.    Denial of Company Credit Card

Plaintiff contends Defendant denied her use of a company credit card due to her gender. This is not an adverse employment action.  See Arensdorf v. Snow, 2006 WL 3302532, * 7 (S.D. Tex. Nov. 13, 2006), aff'd 259 Fed. Appx. 638 (5th Cir. 2007) (finding employer's decision to obtain the return of plaintiff's government phone card was not an "ultimate employment action" under Fifth Circuit law because of its "lack of consequence to a decision to hire, grant leave, discharge, promote or compensate Plaintiff."); see also Whitcomb v. First American Nationwide Documents, 2006 WL 218016, * 7 (D.Colo. Jan. 27, 2006) (finding loss of use of the company credit card, cell phone and reserved parking space did not constitute adverse employment action under Title VII).   Accordingly, Plaintiff's disparate treatment claims under TCHRA and Title VII based on this action fail.

### e.    Failure to Invite Plaintiff on Hunting Trips

---

[10] NOV's Employee Vehicle Allowance Mileage Reimbursement Policy and Procedure Guidelines provides that if an employee averages more than 500 but less than 1250 business miles per month, he or she is required to use his or her own vehicle, and will be paid $400 monthly vehicle allowance and be reimbursed for business miles driven at the approved IRS rate.  If an employee exceeds 1200 miles per month they may drive a company vehicle rather than purchasing their own vehicle.  (D.E. 29, Ex. 3 at 1.)   Plaintiff admits in that she was fairly reimbursed for all of her mileage, but claims that she drove 2300 miles per month, so that the Policy would potentially have allowed her to use a company vehicle.  (D.E. 32, Ex. B (EEOC charge) at 3; D.E. 29, Ex. 2 (Wojciechowski depo.) at 45.)   Jurecek contends, however, that miles incurred driving from Plaintiff's home to the work was not considered by NOV as "business miles" under the terms of the policy (D.E. 29, Ex. 1 (Jurecek affidavit) at ¶23), which does not define "business miles." (D.E. 29, Ex. 3.)

Plaintiff contends she was not invited to go on hunting trips that NOV's male employees went on.  However, Plaintiff concedes she never asked to go on the hunting trips and that no one actually prevented her from going.  (D.E. 29 (depo.) at 99.)  Jurecek contends that if Plaintiff had asked to join on hunting trips, she would have been allowed to attend. (D.E. 29, Ex. 1 (Jurecek affidavit) at ¶ 25.)

In any case, Defendant's allegedly discriminatory decision not to invite Plaintiff on hunting trips also does not constitute an adverse employment action.  See Agyekum v. American Plant Food Corp., 2009 WL 2044656, * 3 (S.D. Tex. July 8, 2009) (finding that not being invited on hunting and fishing trips was not an actionable "adverse employment action.") (citing Pegram v. Honeywell, Inc., 361 F.3d 272, 282 (5th Cir.2004) ("[A]n adverse employment action consists of ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating" (citations and quotations omitted)).  Accordingly, Plaintiff's disparate treatment claims under TCHRA and Title VII based on this action fail.

### f.       Failure to Give Plaintiff a Performance Review

Plaintiff contends that while she had requested performance reviews – which she claims "often came with pay raises in the company" – she was never given a performance review and was never given a legitimate reason for the denial of her request.  She contends she was told that she "was making enough and that '[she] shouldn't have a problem paying another babysitter' because of all the extra work that [she] put in."  (D.E. 32, Ex. A (Wojciechowski affidavit) at 2.)

NOV's failure to grant Plaintiff's request for a performance review, in and of itself, does not constitute an "adverse employment action" under Fifth Circuit law.  In Mitchell v. Snow, plaintiff, a Treasury employee, received a low score on her yearly job performance review.  She asserted that the low score constituted discrimination on the basis of race and sex in violation of

Title VII. <u>Mitchell v. Snow</u>, 326 Fed. Appx. 852, 853-54 (5th Cir. 2009).  The Fifth Circuit held that "[t]he 2003 review itself, standing alone, plainly does not meet the ultimate-employment-decision test." <u>Id</u>. at 855.

In the alternative, Plaintiff argued the failure to award her a "step increase" in salary after the 2003 review was an "adverse employment action." <u>Id</u>.  However, the Fifth Circuit upheld the district court's finding that there was "no evidence connecting [plaintiff's] performance evaluation to her compensation[,]" stating: "[w]e see no evidence that the 2003 review led to her being denied a step increase, nor that a rating higher than the 4.2 she received would have qualified her for a step increase." <u>Id</u>. (citing <u>Pegram v. Honeywell, Inc.</u>, 361 F.3d 272, 283 (5th Cir. 2004) ("[I]n cases where the evidence produces no objective showing of a loss in compensation, duties, or benefits," no adverse employment action exists."))

In sum, the Fifth Circuit upheld the court's finding that neither the low score on the review nor the attendant failure to aware a pay increase constituted an "adverse employment action." <u>Id</u>.

In this case, Plaintiff makes a similar claim.  She alleges that after her promotion to Sales Manager in August 2008 she was denied a performance evaluation and that, in consequence, she was denied a pay raise.  (D.E. 32, Ex. A (Wojciechowski affidavit) at 2.)  However, as in <u>Mitchell</u>, Plaintiff gives no evidence that the denial of a performance review actually led to her being denied a pay raise.  Accordingly, NOV's denial of her requests for a performance review does not constitute an "adverse employment action" under Title VII.  <u>Mitchell</u>, 326 Fed. Appx. 852, 853-54; <u>see</u> <u>also</u> Watkins v. Harvey, 2007 WL 1861024, *2 (D. Md. June 19, 2007) ("the failure to provide a performance evaluation does not itself constitute an adverse employment

action."); Arensdorf, 2006 WL 3302532, *7 (finding Plaintiff's complaints that her manager gave her poor performance evaluations was not an adverse employment action.)

### g.        Failure to Give Plaintiff a Pay Raise

Plaintiff contends she was told by Jurecek and K.C. Potter that she would have a pay increase after 90 days of taking up the Sales Manager position, but was never given a raise. (D.E. 29, Ex. 2 (Wojciechowski Depo.) at 84.) (Q: "Michael Jurecek and K.C. Potter told you that you would get a pay increase after you had been in the sales manager position for approximately 90 days?" A: "Yes, ma'am.")  (D.E. 29 (depo) at 84.)  She contends other males in her position were given such raises.  (D.E. 32, Ex. A (affidavit) at 2.)

Defendant contends it did not have a policy or practice of granting pay raises within 90 days of starting a management level position and that due to a freeze starting in late 2008 or early 2009 no merit based pay raises were given to any Sales Managers. (D.E. 29 at 29.)  However, Plaintiff claims that pay increases were in fact given, despite NOV's assertion there was a pay freeze.  (D.E. 32, Ex. A (Wojciechowski affidavit) at 2, 4.)    Defendant contends Plaintiff "testified that she could not identify a any male sales manager who received a pay raise increase during [the last quarter of 2008 or the first or second quarters of 2009]."  (D.E. 29 at 24.)

However, according to Defendant's own statement of position to the EEOC, Brad Pawlak, who was promoted to Sales Manager on March 27, 2009, received a salary increase on April 26, 2009.  (D.E. 32, Ex. C (NOV's June 1, 2009 statement of position to the EEOC) at 6.) An issue of fact exists as to whether NOV was giving pay raises to male Sales Managers such as Pawlak during the last quarter of 2008 or the first quarter of 2009.

There is no question that Defendant's alleged failure to give Plaintiff a raise constitutes an adverse employment action.  Walker, 214 F.3d at 629 ("ultimate employment decisions"

include "hiring, granting leave, discharging, promoting and compensating.")   As discussed above, Plaintiff has raised an issue of fact as to whether Sales Managers such as Pawlak were engaged in equal work under the Equal Pay Act.   Pawlak may also qualify as a "similarly situated co-worker" from the opposite sex under the more lenient standards of Title VII.   See Meeks, 15 F.3d at 1019; Miranda, 975 F.2d at 1529.

Accordingly, Plaintiff has made out a *prima facie* case for discrimination under Title VII sufficiently to survive summary judgment, based on Defendant's alleged failure to give her a pay raise.   She has shown that (1) she is a member of a protected class; (2) she was qualified for her position; (3) that she suffered an adverse employment action; and she has raised an issue of fact as to whether (4) other, similarly situated co-workers outside the protected class (e.g. Pawlak) were treated differently.   Hart, 243 Fed. Appx. at 818.

### 2.      Legitimate, Nondiscriminatory Reason for Denial of Pay Raise

If a plaintiff makes a *prima facie* showing under Title IV, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action. See Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000).   The employer's burden is only one of production, not persuasion, and involves no credibility assessment. Id.

Defendant contends the reason Plaintiff did not receive a review or raise was due to her recent pay increase, her lack of experience, performance problems in her role, and the pay freeze in place as of late December 2008 or early January 2009.   (D.E. 29, p. 23-24; D.E. 29, Ex. 1 (Jurecek affidavit) at ¶ 6.)

Plaintiff admits her salary had been increased from $11 per hour to a salary of $37,440 per year when she was promoted to officer manager in May 2008, and admits her supervisor K.C. Potter complained about her performance as Sales Manager.   (D.E. 29, Ex. 2

(Wojciechowski Depo.) at 32-34, 59.)  Plaintiff also admits in her deposition that she was told the company was on a freeze, and this was why she wouldn't be getting a raise, (Id. at 85) (Q: "K.C. Potter told you that you wouldn't be getting a pay raise, because of this wage freeze, correct?" A: "He said he was going to try to see what we can do, but we – he was on a – we were on a freeze.")

Defendant has met its initial burden to provide a "legitimate nondiscriminatory" justification for the decision not to give Plaintiff a raise.

### 3.    Pretext

If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose.  Russell, 235 F.3d at 222.  To carry this burden, the plaintiff must rebut each nondiscriminatory reason articulated by the employer.  Laxton v. Gap Inc., 333 F.3d 572, 578 (5th Cir. 2003).  To establish that an employer's proffered reason for an adverse action against an employee is pretextual under Title VII, the employee is required to demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in defendant's proffered reasons such that "a reasonable factfinder could rationally find them unworthy of credence." Medina v. Income Support Div., New Mexico, 413 F.3d 1131, 1136 (10th Cir.2005).

After considering the record as a whole, the Court finds Plaintiff has met her burden on summary judgment to raise a genuine issue of material fact as to whether Defendant's justifications are mere pretext for gender discrimination.  As discussed above, the summary judgment evidence suggests pay raises were in fact given to similarly situated employees such as Brad Pawlak.  The potential inconsistency between Jurecek's contention that the pay freeze was

a primary factor in denying Plaintiff a raise, and the evidence suggesting that Sales Managers such as Pawlak did receive raises, indicates there remains a genuine issue of fact as to whether Defendant's gender-neutral reasons are mere pretext. <u>Medina</u>, 413 F.3d at 1136.  Plaintiff bears the ultimate burden of proving that NOV's proffered reasons are not true but instead a pretext for real discriminatory purpose.  <u>McKinney</u>, 235 F.3d at 222.

## V.    CONCLUSION

For the reasons explained above, Defendant's Motion for Summary Judgment (D.E. 29) is DENIED IN PART and GRANTED IN PART.  Specifically, summary judgment is DENIED with respect to Plaintiff's unequal wages claims under the Equal Pay Act and Title VII. Summary judgment is GRANTED with respect to Plaintiff's disparate treatment claims under Title VII, the Equal Pay Act and the TCHRA, with the exception of Plaintiff's claim based on Defendant's alleged refusal to give her a pay increase when she was promoted to Sales Manager. Defendant's Motion to Strike (D.E. 33) is DENIED in PART and GRANTED IN PART, as detailed above.

SIGNED and ORDERED this 12th day of January, 2011.

Janis Graham Jack
United States District Judge